CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2025 NOV 19 A 10: 03

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY — NEWARK VICINAGE

Kaitron Bryant, Plaintiff

v.

Malik Myers and New York Film Academy, Defendants

Case No. 2:25-cv-16688 (E. Padin, J.) (A. M. Espinosa, M.J.)

THIRD SUPPLEMENTAL DECLARATION IN SUPPORT OF EMERGENCY MOTION FOR REFERRAL TO U.S. ATTORNEY AND U.S. MARSHALS SERVICE AND FOR IMMEDIATE PROTECTIVE RELIEF

I, Malik Myers, declare under penalty of perjury that the following is true and correct to the best of my knowledge.

I. PURPOSE OF SUPPLEMENT

This Third Supplemental Declaration is submitted in further support of my pending Emergency Motion for Referral to the U.S. Attorney and U.S. Marshals Service and for Immediate Protective Relief. The purpose of this supplement is to provide the Court with new, material evidence demonstrating that Plaintiff, Kaitron Bryant, has expanded and repeated his retaliatory conduct beyond direct harassment and intimidation to a coordinated, multi-platform misuse of copyright-reporting systems on Facebook and Instagram.

These actions occurred immediately after Plaintiff learned that I had filed a restraining order against him and were designed to damage my professional standing, suppress my ability to promote the jointly owned film For Lila, and inflict reputational and economic harm. All exhibits will be submitted with this declaration via flash drive.

NEW EVIDENCE

EXHIBIT Q

**August 29 – September 2, 2025

Meta Platforms False DMCA Takedowns, Multi-Platform Retaliation, and Joint-Ownership Interference**

1. Overview

Exhibit Q contains screenshots of multiple copyright takedowns issued against my personal and professional social-media pages—including Facebook and Instagram—immediately after Plaintiff learned I had filed a restraining order. These takedowns originated from Plaintiff-controlled accounts, including:

Facebook.com/CroatanFilm

Instagram.com/croatanfilm

Between August 29 and September 2, 2025, Meta Platforms removed:

the For Lila trailer

behind-the-scenes footage

cast announcements

thank-you posts

my editing reels

derivative promotional materials fully within my legal rights

Each takedown notice appears in Exhibit Q.

2. Plaintiff Had No Exclusive Audiovisual Copyright

At the time Plaintiff submitted these takedowns:

Plaintiff's only registration was for the underlying script (TXu 002316481);

He possessed no audiovisual copyright;

All film footage, edits, stills, and trailers constitute joint works, co-owned under 17 U.S.C. §§ 101, 201(a);

Under copyright law, I am fully entitled to use and display them without Plaintiff's consent;

The U.S. Copyright Office independently confirmed my derivative rights. [Docket number 25-CCB-0397]. The Plaintiff is aware this current lawsuit is frivolous and vexatious.

The takedowns were knowingly false.

3. Statutory Violations

Plaintiff's conduct constitutes:

17 U.S.C. § 512(f) – Knowing misrepresentations in DMCA notices

18 U.S.C. § 1343 – Wire fraud via false statements submitted electronically

18 U.S.C. § 1513(e) – Retaliation for filing a legal complaint

18 U.S.C. § 2261A – Cyberstalking via digital harassment across platforms

18 U.S.C. § 1038 – Fraudulent representations invoking legal authority

4. Harm

As shown in Exhibit Q, these takedowns resulted in:

removal of professional materials

account warnings

significant professional disruption

economic and reputational harm

interference with my ability to promote For Lila

The timing—days after he learned of my TRO—proves retaliatory intent. [Docket Number FV-09-000473-26]

EXHIBIT R

**August 22 – October 14, 2025

Coordinated Third-Party Involvement, Group Chats, and Defamatory Mass Email Including Plaintiff's Mother**

1. Jaquair Gillette's Texts (Aug. 22, 2025)

Screenshots show Co-Producer Jaquair Gillette at 12:31PM reaching out at Plaintiff's direction, attempting to initiate a three-way call despite knowing I had filed for a restraining order. Jaquair's text messages show that Plaintiff was relaying information through him and instructing him to contact me despite the fact that I had already filed for a restraining order.

Messages include:

"I'm trying to figure out what's going on because someone is telling me moves are happening."

"He told me he's making moves and I should talk to you."

These messages demonstrate:

Plaintiff using Jaquair as an intermediary, third-party facilitation, ongoing retaliation post-TRO filing.

This supports violations of 18 U.S.C. §§ 1512(b), 1513(e), 371.

2. "Film" Group Chat (Aug. 22, 2025)

In another group chat titled "Film," at 9:01PM the Plaintiff expressly stated in writing that "The executive producer is fully supportive of my decision to press legal matters." The executive producer of For Lila is Federica King, the Plaintiff's mother, as publicly corroborated by the film's IMDb listing - https://www.imdb.com/title/tt32333098/.

This written admission further confirms that the Plaintiff's conduct throughout this dispute has been undertaken with the knowledge, participation, and approval of his mother. This statement directly corroborates (Exhibit J), in which the Plaintiff himself repeatedly attributed his actions—including his threats, defamatory statements, and purported legal strategies—to Federica by name. Taken together, these exhibits demonstrate that Federica King is not a peripheral figure but an active, informed participant in the Plaintiff's campaign of harassment, false allegations, and retaliation against Defendant. Indiana Pagan and Jaquair Gillette were a part of this group chat and complicit in his conduct.

3. "Case" Group Chat (Sept. 30, 2025)

In the group chat titled "Case," at 3:31PM Plaintiff repeatedly asserted that he had retained, consulted with, or was imminently engaging multiple attorneys, and further claimed that those attorneys were advising him on legal strategies specifically targeting me. These statements were clearly intended to coerce, intimidate, and isolate me professionally and personally. Plaintiff also further explicitly in writing implicates his mother in his conduct.

For example, as reflected in the attached screenshots, Plaintiff stated:

"I'll be filing a federal case against Malik today and getting a lawyer."

"I need all your statements ASAP and will be submitting them to a lawyer to sue him."

"I got in contact with the lawyer today to discuss what I can sue for."

"I'll disclose the next steps in a private message. I have a few lawyers to contact today."

"Federica will be talking to lawyers tomorrow. Just informed her."

"I'm changing his already filed copyright lawsuit to a full-blown federal case."

Plaintiff used repeated references to nonexistent or speculative "lawyers" as a weapon to intimidate me and to create the false impression that I was facing imminent litigation or professional consequences. At no point did Plaintiff provide any documentation that he was represented by counsel, nor did any attorney ever contact me or my institution.

The overwhelming pattern displayed in these communications shows Plaintiff invoking the authority of fictional legal professionals to pressure cast and crew members into supporting his false narrative and to threaten me with baseless legal action.

Crucially, despite repeatedly invoking retained counsel and legal advice in these written messages which corroborates (Exhibit J) — August 16, 2025 Recorded Phone Call (Threats and Invocation of Named Counsel), Plaintiff appears before this Court pro se and has never filed any notice of appearance by any attorney. His filings contain no indication that any lawyer has reviewed, drafted, or approved them. This stark discrepancy between his private representations and his actual posture before the Court strongly suggests that Plaintiff's repeated claims of legal counsel were knowingly false and deployed for the purpose of harassment, coercion, and manipulation.

Furthermore, Plaintiff's statements demonstrate a pattern of misrepresentation, intimidation, and deliberate falsification designed to damage my reputation, interfere with my professional relationships, and lend illegitimate credibility to his threats. His messages also purport to describe legal advice from unnamed attorneys instructing him to sue me, contact IMDb/Amazon, track my contributions, and initiate federal litigation — none of which ever occurred. These false assertions mirror the broader pattern of dishonesty and retaliatory conduct detailed throughout this declaration.

For these reasons, these communications further support my request for sanctions and protective measures. Plaintiff knowingly used fabricated legal threats to intimidate and manipulate third parties, weaponized these false claims to isolate me, and attempted to create a false narrative of legal authority that directly contradicts his pro se status and the record before the Court.

4. "Federal case" Group Chat (Oct. 14, 2025)

Plaintiff created a group chat titled "Federal case" at 2:40 AM, adding Jaquair and at least one additional person. Screenshots show Plaintiff stating:

"I'm suing him for 150k."

"IMDb told me they'll remove him from the film once I get the docket number."

"I found his family online—I'll send them a copy."

"Jacquair, maybe you can talk some sense into him, because I don't think he really knows what me and Federica have coming for him."

These messages show:

explicit retaliation tied to litigation, weaponization of legal threats, intent to contact my family for intimidation, active involvement of Plaintiff's mother in retaliatory plans.

4. Defamatory Mass Email (Oct. 14, 2025)

Shortly after the group chat, at 2:06 AM, Plaintiff sent a mass email to 17+ cast and crew members of For Lila, including the email address of his mother, (kingfl1966@gmail.com).

Together, these materials corroborate Plaintiff's pattern of escalating harassment, demonstrate third-party entanglement, and confirm that Plaintiff's mother is directly involved in his retaliatory actions—both because Plaintiff invokes her repeatedly in verbal threats and because he copied her into written defamatory communications.

The inclusion of his mother is not incidental. Plaintiff previously invoked her as part of his threats, claiming that she was involved, advising him, or had "something coming" for me. By adding her to this defamatory circulation list, Plaintiff confirmed her active involvement in his retaliatory and defamatory efforts. Indiana Pagan and Jaquair Gillette were a part of this group chat and complicit in his conduct. 203-706-9214 and 862-262-0494 are their phone numbers.

This is consistent with:

18 U.S.C. § 1513(e) — retaliating against a witness/victim

18 U.S.C. § 1621 / § 1001 — knowingly making false written statements

18 U.S.C. § 2 — aiding and abetting (for those he copies or recruits to assist, particularly his mother, Federica King)

18 U.S.C. § 371 — conspiracy (when coordinating defamatory or retaliatory acts with others)

EXHIBIT S

**August 17–18, 2025

Overnight Threats, Dozens of Calls, Academic Intimidation, and Seven-Hour Surveillance Outside My Apartment**

This is the earliest documented pattern of Plaintiff's conduct and forms the factual basis for my initial TRO.

1. Overnight Threats to Appear at My School

Messages include:

"I'll be at your school and the president's office tomorrow."

"Do you want me to walk the hallways and embarrass you?"

"I'll be at your school waiting for you."

This implicates:

18 U.S.C. § 2261A(2) – cyberstalking

18 U.S.C. § 875(d) – reputational threats to compel compliance

2. Threats of Academic Consequences and Coercive "Choices"

Plaintiff threatened to:

contact my dean, contact the school president, and initiate academic discipline.

He framed coercion as options:

"Expulsion or lawsuit — which one we doing?"

Such statements are coercive extortion under 18 U.S.C. § 875(d).

3. Dozens of Calls at All Hours

Screenshots document:

numerous audio/video calls between 12:42–1:17 AM

another wave between 6:42–7:17 AM

This fits the "course of conduct" requirement for 18 U.S.C. § 2261A.

4. Real-Time Monitoring of My Online Status

Messages include:

"It says you're active…"

"You been off 8 minutes…"

This shows targeted cyberstalking behavior.

5. Invocation of Third Parties

Plaintiff repeatedly referenced:

"Eduardo said—"

"Manu told me—"

This aligns with:

18 U.S.C. § 1512(b) – using others to pressure a witness

6. Explicit Retaliatory Statements

Examples:

"I'm going to make an example out of you."

"I'm dedicating my time to you just like I did Joshua."

"Don't think you'll show up at that festival peacefully."

These statements fall under § 1513(e) (retaliation).

7. False Claims About Jointly Owned Film Footage

He insisted I had "unlawfully" shown the film—knowing:

he did not own audiovisual copyright, I possessed derivative-use rights under contract and joint-ownership principles entitled me to show the work.

False copyright claims constitute:

18 U.S.C. § 1001 – false statements

18 U.S.C. § 1343 – wire fraud

8. Seven-Hour Physical Surveillance Outside My Apartment

Later that day, Plaintiff appeared outside my residence and remained there for over seven hours, confirming escalation from digital to physical stalking. This event directly prompted my filing for a Temporary Restraining Order the following morning.

The severity and multiplicity of Plaintiff's actions also reflect bad faith, abuse of process, and continued danger of harm—all of which squarely justify the relief requested.

During our most recent TRO hearing, Plaintiff testified under oath that he appeared at my residence solely "to resolve and discuss a business dispute." This statement was false.

The screenshots contained in Exhibit S document dozens of harassing messages, threats, and attempted calls from Plaintiff in the hours leading up to his arrival—yet none of these communications indicated that he intended to travel to my home, request a meeting, or resolve any professional matter. Plaintiff never provided notice of his arrival, nor did he articulate any benign purpose in appearing at my building.

His sustained presence occurred immediately after numerous calls both through his phone and Instagram account, issuing escalating threats concerning my academic standing, and realizing I wasn't at school. I have pictures of his vehicle parked outside my apartment. Plaintiff's license Plate Number is clearly visible in my photo evidence - G71SMB.

Plaintiff's sworn claim that he went to my residence to "discuss business" is directly contradicted by his own messages, his tone, his coercive threats, and his subsequent behavior. His unannounced appearance—combined with an hours-long refusal to leave—cannot reasonably be characterized as a "business meeting," but rather as a continuation of the harassment, intimidation, and physical surveillance already in progress.

This contradiction between Plaintiff's statements under oath and the contemporaneous documentary evidence further underscores the retaliatory intent and establishes that his testimony at the TRO hearing constituted knowing falsehood and perjury, consistent with the pattern of deceptive and coercive conduct described throughout this Declaration.

This fits the statutory definition of:

18 U.S.C. § 2261A(1) – stalking involving physical presence

18 U.S.C. § 1513(e) – retaliation

18 U.S.C. § 875(d) – threats meant to compel compliance

18 U.S.C. § 1621 - perjury - knowingly making a false, material statement under oath in any proceeding where an oath is authorized by U.S. law.

18 U.S.C. § 1623 - knowingly making false material statements under oath in any federal court proceeding.

Requested Relief

In light of the overwhelming documentary and electronic evidence now before the Court, I respectfully request that the Court:

1. Refer this matter to the U.S. Attorney's Office and U.S. Marshals Service for investigation and potential prosecution under the statutes enumerated above, including 18 U.S.C. §§ 1512, 1513, 2261A, 875(d), 1343, and 371.

2. Issue an Emergency Protective Order under 18 U.S.C. § 1514 - prohibiting Plaintiff—and any individual acting on his behalf or at his direction, including but not limited to Jaquair Gillette, Indiana Pagan, and Federica King—from engaging in any direct or indirect contact with me or issuing fraudulent takedowns of my work.

3. Authorize the issuance of the requested Rule 45 subpoenas to Meta Platforms, Inc., Google LLC, and the relevant carriers, limited to metadata and administrative logs, for authentication of the conduct documented in Exhibits J through S.

4. Impose sanctions under Fed. R. Civ. P. 11 and the Court's inherent authority for Plaintiff's repeated misuse of legal processes, false statements, fraudulent copyright claims, and retaliatory filings.

5. Award compensatory damages to offset the financial losses and emotional distress resulting from Plaintiff's ongoing and escalating harassment—including the harms caused by the removal of professional materials from social-media platforms, reputational injury, and interference with my ability to work.

Final Statement

Plaintiff's conduct is not isolated, accidental, or merely hostile—it is systematic, intentional, retaliatory, and ongoing. It demonstrates a willingness to weaponize legal systems, digital platforms, third parties, and personal relationships to inflict harm, exert control, and obstruct my ability to participate safely in this litigation.

Defendant has sustained the Plaintiff's harassing, retaliatory, escalating, and stalking behavior for months. All misconduct committed on August 22 onward including the filing of this case is a retaliatory action for my TRO as corroborated by the Plaintiff's words explicitly in writing (Exhibit H- October 12, 2025).

For these reasons, immediate federal intervention, protective relief, and sanctions are not only justified—they are urgently necessary.

Date: November 19 2025

Respectfully submitted,

Malik Myers

Malik Myers, Defendant Pro Se